# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF PENNSYLVANIA

SECURITIES AND EXCHANGE
COMMISSION,

                              **Plaintiff,**

                         **v.**

**CHARLES S. LENZNER and MICHAEL P. PITTERICH,**

                              **Defendants.**

**Civil Action No.**

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges:

## SUMMARY

1. This case involves unlawful, insider trading by Michael P. Pitterich ("Pitterich"), who purchased the common stock of NSD Bancorp after receiving an unlawful tip from Charles S. Lenzner ("Lenzner"). Lenzner was a Director of NSD Bancorp, Inc. ("NSD Bancorp"). During a social outing on or about September 22, 2004, Lenzner provided Pitterich with material, non-public information concerning NSD Bancorp's on-going merger negotiations. On September 23, 2004 and on October 1, 2004, Pitterich, who had no prior history of trading in NSD Bancorp stock, purchased a total of 2,000 shares. The merger negotiations culminated on October 15, 2004 when NSD Bancorp publicly announced that it had signed a merger agreement with F.N.B. Corporation ("FNB"). Following this announcement, NSD Bancorp's stock rose $12.68 or 52 percent. On October 18, 2004, Pitterich sold all 2,000 shares for a profit of $25,230.

2. By engaging in the conduct described above, and described more fully below, Pitterich and Lenzner (collectively, "Defendants") have engaged in acts, practices, or courses of business that violate Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] promulgated thereunder. The Commission, pursuant to the authority granted it by Sections 10(b) and 23(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78w(a)], has promulgated Rule 10b-5 [17 C.F.R. § 240.10b-5], which Rule was in effect at all times relevant hereto and is still in effect.

## JURISDICTION AND VENUE

3. The Commission brings this action pursuant to Sections 21(d) and 21A of the Exchange Act [15 U.S.C. §§ 78u(d), 78u-1].

4. This Court has jurisdiction over this action pursuant to Sections 21(e), 21A and 27 of the Exchange Act [15 U.S.C. §§ 78u(e), 78u-1, 78aa].

5. Defendants can be found and conducted business in, or are inhabitants of and/or reside in, the Western District of Pennsylvania. Certain of the acts, transactions, practices and courses of business constituting the violations alleged herein occurred within this judicial district. Venue is appropriate in the Western District of Pennsylvania under Section 27 of the Exchange Act [15 U.S.C. § 78aa].

6. In connection with the conduct described herein, Defendants, directly or indirectly, made use of the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange.

**DEFENDANTS**

7. Lenzner resides in Sewickley, Pennsylvania. He has been in the transportation business for the past 35 years. At all relevant times, he was a member of the Board of Directors ("Board") for NSD Bancorp, but has since retired.

8. Pitterich resides in Sewickley, Pennsylvania. He is the owner and President of a steel management company located in Pennsylvania. Pitterich is licensed to practice law in Pennsylvania.

**OTHER RELEVANT ENTITY**

9. NSD Bancorp, Inc. was the holding company for Northside Bank, formerly headquartered in Pittsburgh, Pennsylvania. NSD Bancorp's stock was registered under Section 12(g) of the Exchange Act and traded on the NASDAQ stock market. On February 24, 2005, pursuant to its merger agreement with FNB, NSD Bancorp terminated its registration.

**FACTS**

10. In early 2004, NSD Bancorp's management and the Board began exploring various strategic alternatives as part of their continuing effort to enhance their banking franchise and to maximize shareholder value. As part of its strategic review, the Board also considered whether it was in the bank's best interest to pursue one or more business combinations with another financial institution.

11. On July 23, 2004, NSD Bancorp formally engaged an investment banker (the "Investment Banker") to explore and pursue such business combinations.

12. The Board was cautioned throughout this process that any information pertaining to a potential merger was confidential and that it was prohibited for them

3

either to trade or to disclose to others any information concerning a potential sale/merger. These reminders reinforced NSD Bancorp's written policy concerning insider trading, which the Board revised in June 2004. The policy specifically prohibited insiders from trading NSD Bancorp securities while in possession of material, non-public information and from tipping others about such information. Moreover, the policy described "contemplated mergers" or "acquisitions" as such material information.

13. On or about July 27, 2004, the Investment Banker contacted FNB and four other companies regarding a potential merger with NSD Bancorp. In August 2004, all five companies executed confidentiality agreements with NSD Bancorp.

14. The Board, including Lenzner, met on August 24, 2004 to discuss the progress of a potential sale/merger. Management promised to provide Board members with a detailed analysis of each potential partner prior to a scheduled September 10, 2004 Board meeting. Board members also were provided with a document containing material, confidential information about the potential merger, including:

    (i)    expected price for NSD Bancorp's stock in the event of a merger;

    (ii)    continued Board involvement in the combined organization;

    (iii)    evaluations of cash versus stock deals;

    (iv)    overall value of the acquirer; and

    (v)    dividend continuation post-merger.

15. On September 10, 2004, four of the companies that the Investment Banker had contacted submitted confidential, non-binding preliminary indications of interest in acquiring NSD Bancorp. FNB was one of those companies and made a preliminary offer of $40 per share of NSD Bancorp stock.

16. On September 15, 2004, the Board, including Lenzner, met to review the terms of the non-binding indications of interest submitted by FNB and the other three companies.

17. On or about September 22, 2004, Pitterich and Lenzner attended a Pittsburgh Pirates baseball game together and met for drinks and food before and after the game. Pitterich, who had season tickets in a box seat, provided a ticket to Lenzner and arranged for his private car to transport them to the game and to the dining and drinking establishments. In addition to this extensive personal contact, Pitterich's cellular telephone records show that he spoke with Lenzner on September 22, 2004 at 1:04 p.m.

18. Sometime during their social outing or during their telephone conversation, Lenzner provided Pitterich with material, non-public information concerning NSD Bancorp's merger negotiations.

19. Given, among other things, his position as a Director and NSD Bancorp's policies against making such disclosures, Lenzner knew or was reckless in not knowing that he breached his duty to the company and its shareholders by disclosing such information to Pitterich.

20. Further, Pitterich knew or was reckless in not knowing of Lenzner's breach given, among other things: (i) the circumstances surrounding the tip; (ii) his knowledge that Lenzner was a Director; (iii) the materiality of the information he received from Lenzner; and (iv) his business and legal background, which suggests that he understood the obligations of company directors and employees to protect confidential information.

21. On September 23, 2004 at 9:47 a.m., Pitterich, who had no prior history of trading in the securities of NSD Bancorp, purchased 1,000 shares of NSD Bancorp's stock at a price of $24.12 per share on the basis of the material, non-public information provided to him by Lenzner. On October 1, 2004, Pitterich, on the basis of the same information, purchased an additional 1,000 shares on margin, at a price of $24.05 per share.

22. On October 15, 2004, NSD Bancorp publicly announced that it had signed a merger agreement with FNB whereby NSD Bancorp shareholders would receive 1.8 shares of FNB common stock for every share of NSD Bancorp stock. In reaction to the announcement, NSD Bancorp's stock rose from an opening price of $24.02 to a closing price of $36.70, an increase of $12.68 or 52 percent.

23. On October 18, 2004, three days after NSD Bancorp's public merger announcement, Pitterich sold all 2,000 shares of his stock for a profit of $25,230.

## CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5, thereunder

24. The Commission realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 23, above.

25. Pitterich and Lenzner, by engaging in the conduct described above, directly or indirectly, in connection with the purchase and/or sale of securities, and by use of the means or instrumentalities of interstate commerce, the mails, or the facilities of a national securities exchange:

(a) employed devices, schemes or artifices to defraud;

(b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c) engaged in acts, practices, or courses of business which operated as a fraud and deceit upon other persons.

26. By reason of the foregoing, Pitterich and Lenzner violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10-b5].

WHEREFORE, the Commission respectfully requests that this Court:

## I.

Issue Orders permanently restraining and enjoining Pitterich and Lenzner from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] promulgated thereunder;

## II.

Issue an Order requiring Pitterich to disgorge the illegal trading profits described herein in the amount of $25,230, plus prejudgment interest in the amount of $5,230, for a total of $30,460;

## III.

Issue Orders requiring Pitterich and Lenzner each to pay a civil penalty in the amount of $25,230, pursuant to Section 21A of the Exchange Act of 1934 [15 U.S.C. § 78u-1; and

## IV.

Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

    s/ Amy J. Greer
Daniel M. Hawke
Elaine C. Greenberg, Pa. I.D. No. 48040
Amy J. Greer, Pa. I.D. No. 55950
Michael Novakovic, Pa. I.D. No. 69491
Lawrence D. Parrish, Pa. I.D. No. 51126

Attorneys for Plaintiff:
**SECURITIES AND EXCHANGE COMMISSION**
Mellon Independence Center
701 Market Street, Suite 2000
Philadelphia, Pennsylvania 19106
Telephone No.: (215) 597-3100

October 17, 2007